MARGARITA BIAGGI-ESBRI, Plaintiff and Appellee, v. EULALIO GÓMEZ-PÉREZ, Defendant and Appellant.

No. 3701. Argued February 19, 1926.—Decided July 22, 1926.

▮▮▮

R. Rivera Zayas for the appellant. José Tous Soto for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Margarita Biaggi brought an action of divorce against her husband, Eulalio Gómez, alleging cruel treatment and grave injury in addressing her in vile language (quoted) in a loud voice in the presence of visitors and neighbors, especially during the month of December, 1923, all of which caused her such physical prostration as to render it impossible for her to live with her husband.

The husband defended, alleging that it was not true that he had treated his wife cruelly, but that, on the contrary, his wife had abused him by her conduct when he was forced

to submit to the amputation of both of his legs because of a disease that had attacked him.

The evidence covers more than one hundred pages of the record and has been analyzed exhaustively in the appellant's brief.

The appellee filed no brief and was not present at the hearing on appeal.

The *Fiscal* filed his report, citing the cases of *Cruz* v. *Domínguez,* 8 P.R.R. 551; *Figueroa* v. *Pierluissi,* 25 P.R.R. 460, and *Kennerley* v. *Kennerley,* 29 P.R.R. 723, and calling the attention of the court to the apparent weakness of the evidence introduced by the plaintiff in support of her action.

And so it appears in fact. It is true that in her testimony the plaintiff presents herself as insulted by the defendant, but when it is undertaken to corroborate her testimony by the testimony of other persons the picture presented is differently shaded.

In the complaint the month of December, 1923, is pointed out as the specific time of the cruel treatment. And it was then that the defendant was taken to the hospital and had both of his legs amputated. A nurse testified that she heard the defendant address some harsh words to his wife and saw the wife come to the office crying one day; but she does not explain the origin of the quarrel, and, admitting the fault of the defendant, taking into account his condition at the time, his rough and indecent language and the vexation that it may have caused to his wife could never be considered, according to the law and the jurisprudence, as a determining cause for the rupture of the marriage bond. It is worthy of attention that only one nurse testified and that the plaintiff did not offer the testimony of the physician who attended the patient, nor that of another patient who was in the same room.

It can not be doubted that the husband in this case is a rough man, accustomed perhaps to the use of strong language, or indecent words. And such being his natural disposition he must necessarily have become exasperated by the

cruel illness that overtook him. The wife could not have been deceived. She was married to the defendant in 1911 and at the beginning of 1914 she sued for and obtained a divorce for cruel treatment. At the end of 1914 she was again married to the defendant, and with him she has lived ever since, and now, when the husband is in the greatest need of a wife's care, she is suing for a divorce.

██ This court since its establishment has held consistently that a divorce should be granted only when one of the statutory causes therefor has been fully proved. On June 15, 1905, in the case of *Cruz* v. *Dominguez*, 8 P.R.R. 551, it was said that "in order that insulting words may entitle the plaintiff to a divorce they must be of such a nature, or accompanied by such other acts, that the situation produced will amount in itself to cruel treatment." And on July 2, 1917, in the case of *Figueroa* v. *Pierluissi*, 25 P.R.R. 460, it quoted from the case of *McDonald* v. *McDonald*, 155 Cal. 665, the following, which would appear as if written expressly for this case. It reads as follows:

"It is universally recognized, at least theoretically, that parties cannot be divorced on the ground of cruelty merely because they live unhappily together from unruly tempers or marital wranglings. Married persons must submit to the ordinary consequence of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. And mere austerity of temper, petulance of manners, rudeness of language, or even occasional sallies of passion, if they do not threaten bodily harm or impairment of health do not as a general rule amount to cruelty. As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes." 9 R.C.L. 336, par. 116.

A detailed analysis of the evidence would only serve to

lengthen unnecessarily this opinion. We have studied it carefully and in our opinion it is not sufficient. At times marriage is of the nature of a cross, and we believe that in this case when the wife reflects and permits the noblest part of her nature to come to the surface she will be happier in carrying her cross patiently and courageously to the end than in abandoning it in the middle of the road.

The judgment appealed from should be reversed and the complaint dismissed without special imposition of costs.